1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9            **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  BRANDON SHAWN BURRUS,                    Civil No.    13-1789 LAB (WVG)
12                          Petitioner,
13          v.                               **REPORT AND**
                                             **RECOMMENDATION RE:**
14  WARDEN J. SOTO, et. al.,                 **DENYING PETITION FOR WRIT**
                                             **OF HABEAS CORPUS**
15                          Respondents.
16

17  **I.    INTRODUCTION**

18          Petitioner Brandon Shawn Burrus, a state prisoner represented by counsel, has filed

19  a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his

20  conviction in San Diego County Superior Court Case No. SCD219172 for kidnaping to

21  commit rape or forcible oral copulation, rape, and forcible oral copulation.  (Pet. at 6-18,

22  ECF No. 1 (Pet.).)[1]  The Court has reviewed the Petition, the Answer and Memorandum

23  of Points and Authorities in Support of the Answer, the Traverse, the lodgments, the

24  record, and all the supporting documents submitted by both parties.  For the reasons

25  discussed below, the Court recommends the Petition be **DENIED**.

26  / / /

27

28  _____
        [1] Page numbers for docketed materials cited in this Report and Recommendation refer
    to those imprinted by the Court's electronic case filing system.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:

a. *The People's Case*

In February 2009, Cristina, age 21, attended college and lived in Pacific Beach. She regularly went to a local bar to socialize with friends. On one such occasion, Cristina drank two cocktails at home and then rode her bicycle to the bar to meet her sister and other friends.

While at the bar, Cristina continued drinking cocktails and became "pretty intoxicated" as the night went on. At some point, Burrus approached Cristina and offered to buy her a shot, but she declined. Burrus talked to Cristina and her friends for several minutes and then walked away. Cristina chatted with Burrus two or three additional times before the bar closed, but she was not attracted to, and did not flirt, with him. [FN 2: Cristina's friends also testified, based on their observations of her interactions with Burrus at the bar, that Cristina had no romantic or sexual interest in him.]

By the time the bar closed at 2:00 a.m., Cristina had drunk seven or eight cocktails. Burrus offered to give her a ride home because he had an SUV that could accommodate her bicycle. Cristina accepted the offer with the understanding that Burrus would pick up her bicycle, return to the bar to pick up her friends and then drop them all off at her house. As Cristina walked with Burrus to his SUV, she sent text messages to a friend she planned to meet at her house. [FN 3: The friend testified he planned to meet Cristina at her house and went there, but Cristina never showed up.]

After Cristina's bicycle was loaded into the SUV, Cristina and Burrus got in, and Burrus drove away from the bar. When Cristina asked Burrus where he was going, he said he was not going back to the bar. Cristina then directed Burrus toward her house, but he did not proceed in that direction. Cristina started to panic and continued to ask Burrus where he was going, but he simply told her to "shut up."

Burrus drove onto a side street, parked the SUV, turned to Cristina and said, "Bitch, suck my dick." When Cristina asked whether he was kidding Burrus said he was serious. Cristina tried to exit the SUV but could not get out because the door was locked. Burrus then exposed his penis, hit Cristina's face and arms, grabbed her head and forced his penis into her mouth. Cristina could not breathe because she was "crying hysterically." Burrus kept on hitting her and calling her a bitch.

Burrus started driving again and proceeded to a freeway.  He pulled over to the side of the freeway and told Cristina to perform fellatio and get on top of him.  Cristina tried to get out of the SUV, but Burrus struck her, threatened to sell her in Mexico, and forced his penis into her mouth.  Burrus then allegedly grabbed Cristina's neck, choked her, and told her he knew from serving in the military how to strangle people without leaving a mark.  He again pushed his penis into her mouth, but she "squeezed on his penis really hard and tried to hurt him."  Cristina feared for her life and told Burrus she thought he was going to kill her and dump her body on the side of the road.  Burrus assured her he was not going to kill her and said, "I'm going to take you to a motel and f*** you.  I'm not done with you."

Burrus then drove to a motel several miles away from Pacific Beach.  He made Cristina pay for the room so he could "cover his tracks."  When they arrived in the room, Burrus disrobed and ordered Cristina to do likewise.  Cristina refused, and Burrus tore off her clothes.  Once they were naked, Burrus climbed on top of Cristina in the bed and inserted his penis into her vagina.  Burrus removed his penis from Cristina's vagina before ejaculation, forced her to perform fellatio, and ordered her to swallow his semen.  After Burrus ejaculated in Cristina's mouth, he went to the bathroom, and Cristina spit his semen on the floor.

Burrus then told Cristina to get in the shower to rinse off.  After showering briefly, Cristina returned to the bedroom and started to dress while Burrus showered.  Burrus came back into the bedroom, told Cristina to get undressed, and inserted his penis into her vagina a second time.  Burrus eventually withdrew his penis from Cristina's vagina and made her perform fellatio so that he could ejaculate in her mouth.  Burrus ended up masturbating instead.

After Burrus finished, Cristina told him she needed to get to class, and he agreed to take her home.  When Burrus dropped Cristina off, he said, "Please don't call the cops."  As soon as Cristina was safely inside, she called 9-1-1 to report the attack.  The police arrived, interviewed Cristina, and took her to have a sexual assault examination.

The nurse who performed the physical examination of Cristina documented the following injuries: abrasions behind the left ear, on the neck and below the left knee; and bruises on the face, the left leg, and vulva and the perineum.  The nurse also closely examined Cristina's vagina, where she found numerous abrasions and lacerations. [FN 4: The People introduced photographs of Cristina's injuries at trial.]  Based on the examination and her performance of approximately 800 sexual assault examinations since 2000, the nurse testified Cristina "had much more injury than the majority of my patients by far."  The nurse further testified Cristina's injuries were of the type expected in cases of sexual assault.

The People also presented DNA evidence through police investigators.  A forensic biologist analyzed a blood stain found on the carpet of Burrus's SUV and determined the blood contained DNA profiles matching Cristinas's profile.  A criminalist who tested the bed sheet from the motel room in which Burrus had sexual intercourse and orally copulated Cristina found sperm cells with DNA profiles matching Burrus's profile.  Another criminalist analyzed a sample collected from Cristina's vagina and found sperm cells with DNA profiles matching Burrus's profile.

b. *Defense Case*

Burrus testified to a different version of the events at trial.  He admitted having sexual relations with Cristina but claimed everything was consensual.  Specifically, Burrus testified that as he was driving Cristina home from the bar, she touched his leg and asked, "So what now?"  Burrus parked his SUV on "some random street" so they could "start making out."  He and Cristina then came up with a plan to go to a motel room to have sex.  Burrus then drove on the freeway toward the motel.  He and Cristina were fondling each other on the way when she grew impatient and "moan[ed], 'Are we there yet?'"  Because Cristina was so eager to have sex, Burrus drove off the freeway onto a street, where Cristina performed fellatio.  Still wanting to have sexual intercourse, but not in the SUV, Burrus and Cristina continued to the motel.  When they finally arrived at the motel, Cristina agreed to pay for a room, and they had sexual intercourse in the room.  After they had sex, Burrus drove Cristina home.  On the way, Cristina asked Burrus if he was going to call her, and he said "no" because he thought it was "a one-night stand."  Upon hearing this, Cristina "was kind of pissed off" and told Burrus to take her home.  Burrus complied.

Burrus called a forensic psychiatrist to testify about the intoxicating effects of alcohol.  Based on a test that determined Cristina's blood alcohol level the morning after her sexual encounter with Burrus, the psychiatrist extrapolated that at 2:00 a.m. that day, when Cristina left the bar, her blood alcohol level would have been so high that "alcoholic blackouts" were possible.  According to the psychiatrist, during such blackouts intoxicated persons may be walking around and appear awake, "but their ability to understand their surroundings [and] their ability to remember what happened is very impaired, and usually they will wake up the next morning and not remember what had happened."

Burrus called witnesses who examined the articles of clothing Cristina wore on the night she met him and also inspected Burrus's SUV.  No rips, frays or tears were found on any of Cristina's garments.  The witnesses also testified the passenger door could be opened from the inside when the door was locked simply by pulling on the interior door handle.

Finally, Burrus called family members and friends to testify about his character.  These witnesses testified Burrus was truthful and treated young women politely and respectfully.

(Lodgment No. 6 at 5-10.)

## III.   PROCEDURAL BACKGROUND

On May 1, 2009, the San Diego County District Attorney's Office filed an Information charging Brandon Shawn Burrus with one count of kidnaping Cristina B. to commit oral copulation, (count one), a violation of California Penal Code (Penal Code) § 209(b)(1), six counts of forcible oral copulation against Cristina B. (counts two, three, four, five, seven, and ten) and one count of forcible oral copulation against Andrea A.

(count eleven), a violation of Penal Code § 288(c)(2), two counts of forcible rape of Cristina B. (counts six and nine), a violation of Penal Code § 261(a)(2), one count of forcible rape of Cristina B. with a foreign object (count 8), a violation of Penal Code § 289(a)(1), and one count of forcible oral copulation in concert against Andrea A. (count 12), a violation of Penal Code § 288a(d). (Lodgment No. 1 at 0008-17.) As to count one, the complaint alleged Burrus was armed with a deadly weapon and that he personally used a deadly weapon, within the meaning of Penal Code §§ 12022.3(b) and 1192.7(c)(23). (*Id.*) As to counts two through ten, the complaint alleged Burrus had committed an offense listed in Penal Code § 667.61(c) against more than one victim, within the meaning of Penal Code § 667.61(a)(c)(e), and that Burrus had kidnaped the victim, within the meaning of Penal Code § 667.61(b)(c)(e). (*Id.*) As to count five, the complaint alleged Burrus had personally used a deadly weapon, a knife, within the meaning of Penal Code §§ 1192.7(c)(23) and 12022.3(a). Finally, as to counts eleven and twelve, the complaint alleged Burrus had committed an offense listed in Penal Code § 667.61(c) against more than one victim, within the meaning of Penal Code § 667.61(b)(c)(e). (*Id.*)

Following a jury trial, Burrus was convicted of counts one, two, four, five, six, seven, nine, and ten, all charges involving Christina B. The jury also found true the kidnaping and kidnaping for the purpose of committing a sexual offense allegations, including those involving Andrea A. (*Id.* at 0241-62.) Burrus was found not guilty of the remaining counts and allegations. He was sentenced to 105 years-to-life in prison. (*Id.* at 0174-76.)

Burrus filed a direct appeal of his conviction in the California Court of Appeal, Fourth Appellate District, Division One. (Lodgment Nos. 3-5.) The state appellate court affirmed Burrus's convictions in an unpublished written opinion. (Lodgment No. 6.) Burrus then filed a petition for review in the California Supreme Court, which denied the petition without citation of authority. (Lodgment Nos. 7-8.)

On July 31, 2013, Burrus simultaneously filed a petition for writ of habeas corpus in the California Supreme Court and in this Court. (Lodgment No. 9, ECF No. 1.) Burrus filed a motion for stay on September 4, 2013, and asked this Court to stay the petition while he exhausted new claims in state court. (ECF No. 4.) The Court granted the motion for stay. (ECF No. 6.)

The California Supreme Court directed the Attorney General to file an informal response to Burrus's state court habeas corpus petition on the issue of whether California Penal Code 667.6(d) is constitutional, and the response was filed on October 25, 2103. (Lodgment No. 10.) The California Supreme Court denied the petition for writ of habeas corpus without citation of authority. (Lodgement No. 11.)

Respondent filed an Answer and Memorandum of Points and Authorities in Support of the Answer (Answer) on July 30, 2014 [ECF No. 17]. Burrus did not file a Traverse.

## IV. DISCUSSION

Burrus raises six claims in his Petition.[2] First, Burrus argues the trial court erred when it admitted evidence of a prior uncharged sexual assault. Second, he claims the trial court erred when it denied his severance motion. In claim three, Burrus contends the trial judge improperly denied the jury's request for readback of Burrus's and Cristina's testimony. Fourth, Burrus argues the evidence was insufficient to support his convictions. Fifth, he contends the mandatory consecutive sentencing scheme of California Penal Code § 667.6(d) was rendered unconstitutional by the Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013). And sixth, he claims his Fifth and Sixth Amendment rights were violated when the trial court sentenced him to consecutive sentences, and thereby increased his sentence, based upon facts not found by a jury. (Pet. at 6-9, 38-80.) Respondent argues the state courts' resolution of the claims

---

[2] As noted by Respondent, the numbering of claims in the Petition differs from the numbering of claims in the attached Memorandum of Points and Authorities. (Answer at 18, fn. 2.) The Court will address Burrus's claims in the same order as Respondent.

1  was neither contrary to, nor an unreasonable application of, clearly established Supreme

2  Court law.  (Answer at 18-38.)

3          A.  *Standard of Review*

4          This Petition is governed by the provisions of the Antiterrorism and Effective

5  Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).

6  Under AEDPA, a habeas petition will not be granted with respect to any claim

7  adjudicated on the merits by the state court unless that adjudication: (1) resulted in a

8  decision that was contrary to, or involved an unreasonable application of clearly

9  established federal law; or (2) resulted in a decision that was based on an unreasonable

10  determination of the facts in light of the evidence presented at the state court proceeding.

11  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's

12  habeas petition, a federal court is not called upon to decide whether it agrees with the

13  state court's determination; rather, the court applies an extraordinarily deferential review,

14  inquiring only whether the state court's decision was objectively unreasonable.  *See*

15  *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th

16  Cir. 2004).

17          A federal habeas court may grant relief under the "contrary to" clause if the state

18  court applied a rule different from the governing law set forth in Supreme Court cases,

19  or if it decided a case differently than the Supreme Court on a set of materially

20  indistinguishable facts.  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  The court may grant

21  relief under the "unreasonable application" clause if the state court correctly identified

22  the governing legal principle from Supreme Court decisions but unreasonably applied

23  those decisions to the facts of a particular case.  *Id.*  Additionally, the "unreasonable

24  application" clause requires that the state court decision be more than incorrect or

25  erroneous; to warrant habeas relief, the state court's application of clearly established

26  federal law must be "objectively unreasonable."  *See Lockyer v. Andrade*, 538 U.S. 63,

27  75 (2003).

28

Where there is no reasoned decision from the highest state court to which the claim was presented, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (*overruled on other grounds by Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B. *Introduction of Propensity Evidence*

In his first claim, Burrus contends the trial court improperly admitted evidence of a prior, uncharged sex offense of which Burrus was accused. (Pet. at 6, 51-59.) Respondent contends the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Answer at 19-22.)

Burrus raised this claim in the petition for review in his direct appeal to the California appellate court. (Lodgment No. 7.) The state supreme court denied the petition without citation of authority. (Lodgment No. 8.) Accordingly, this Court must "look through" to the state appellate court's opinion denying the claim as the basis for its analysis. *Ylst*, 501 U.S. at 805-06. That court wrote:

### 1. *Additional Facts*

Before trial, Burrus moved to exclude evidence pertaining to an uncharged sexual assault against Jessica. As described in Burrus's motion, the uncharged assault occurred after midnight on October 7, 2007, when Burrus was stationed on a military base and he and Jessica were together in a friend's apartment. Jessica had been drinking heavily, recently smoked marijuana and taken one pill of ecstasy. [FN 6 omitted]. Jessica claimed that after the friend went to bed, Burrus grabbed her, threw her onto a couch and ordered her to "suck his dick." When Jessica objected, Burrus told her to "shut up," choked her and forced her to perform fellatio. In his motion, Burrus did not dispute the potential admissibility of this evidence under Evidence Code section 1108, but argued the evidence should be excluded under Evidence Code section 352 because of "the extreme consumption of time; the severe burden to Mr. Burrus in defending the allegations; and the significant lack of certainty that the incident occurred as alleged." The trial court denied Burrus's motion.

At trial, several witnesses testified about Burrus's alleged assault against Jessica. Jessica herself testified to the events as they were described in Burrus's motion. On cross-examination, Burrus's trial counsel impeached Jessica by getting her to admit several inconsistencies between her then-present recollection of the uncharged assault and the version she previously had reported to authorities. Other witnesses called by Burrus testified Jessica had a reputation for dishonesty and adultery. Burrus testified he had an ongoing consensual sexual relationship with Jessica, and she willingly performed fellatio on him at the friend's apartment on October 7, 2007.

### 2. *Legal Analysis*

Generally, evidence of a defendant's character is not admissible to prove his conduct on a specific occasion conformed to his character. (Evid. Code, § subd. (a).) An exception to this rule provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1108, subd. (a).) Because evidence a defendant committed prior sex offenses is "particularly probative" in a sex offense case (*People v. Story* (2009) 45 Cal.4th 1282, 1293) [FN 7], such propensity evidence is presumably admissible, with

[FN 7: Regarding evidence of prior crimes in general, our Supreme Court has observed: "'[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .'" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402; accord, *Alcala v. Superior Court*, (2008) 43 Cal.4th 1205, 1223-1224 (*Alcala*). Under this reasoning, Burrus's prior acts of forcible oral copulation against Jessica would tend to negate his assertion that a later victim consented to perform fellatio on him. (Cf. *People v. Stitely* (2005) 35 Cal.4th 514, 532 (*Stitely*) ["The chance that

defendant acted with innocent intent [in committing a sex act on one victim] is sharply reduced by evidence that he committed a forcible, nonconsensual sex act upon [another victim] a few months earlier."].)

under Evidence Code section 352, its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create a substantial danger of undue prejudice [FN8 omitted], confusing the issues or misleading the jury. (*People v. Loy* (2011) 52 Cal.4th 46, 62 (*Loy*).)

On appeal, a trial court's ruling under Evidence Code section 1108 is subject to review for abuse of discretion. (*Loy, supra*, 52 Cal.4th at p. 61; *People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1104.) We will reverse such a ruling only if the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1116 (*Nguyen*).) Here, Burrus contends "the trial court abused its discretion in allowing [a] mini-trial to unfold, unduly burdening the defense, unduly consuming time to present the highly suspect and far from credible propensity evidence, and giving the jury the opportunity to 'convict' [him] of this incident on the lesser preponderance of the evidence standard, causing the jury undue confusion." We disagree.

The evidence regarding Burrus's uncharged sexual assault on Jessica was probative of his disposition or propensity to commit sex offenses. "Evidence of a prior sexual offense is indisputably relevant in a prosecution for another sexual offense." (*People v. Fitch* (1997) 55 Cal.App.4th 172, 179; see also *People v. Van Winkle* (1999) 75 Cal.App.4th 133, 141 [evidence of other offense is "extremely relevant, especially with regard to sexual offenses"].) The uncharged assault on Jessica and the assault on Cristina bore striking similarities: Both incidents occurred late at night after the victim had consumed intoxicants; using the same obscene language, Burrus ordered the victims to perform fellatio on him; and, when the victims refused, Burrus became angry and choked them. Thus, the propensity evidence was highly probative because "the uncharged conduct [was] similar enough to the charged behavior to tend to show the defendant did in fact commit the charged offense." (*Nguyen, supra*, 184 Cal.App.4th at p. 1117.) [FN 9 omitted.]

Burrus contends, however, that "the prejudicial effect of the propensity evidence outweighed the probative value, and [the evidence] should not have been admitted." (See Evid. Code, § 352.) Burrus's main argument, which is based on his view of the evidence, is that the "degree of certainty" of his commission of the uncharged assault on Jessica was so low that the trial court should not have admitted evidence of that assault. (See *People v. Falsetta* (1999) 21 Cal.4th 903, 917 [listing degree of uncertainty of commission of prior offense as one of many factors to be considered in undue prejudice analysis].) It is true, as Burrus points out in his brief, that Jessica's credibility was impeached, and her version of the assault was contradicted by other testimony. But, her testimony, if believed, would constitute evidence of Burrus's disposition to commit acts of forcible oral copulation, including those charged in this case. (See *id.* at p. 915 [evidence defendant committed other sex offenses is circumstantial evidence he committed charged sex offenses]; fn. 7, *ante*.) Whether to believe Jessica,

or instead believe Burrus and the other witnesses who contradicted her, was for the jury to decide.  (See, e.g., *Maury*, *supra*, 30 Cal.4th at p. 403.)  We cannot say Jessica's testimony that Burrus forced her to perform fellatio on him was so equivocal or lacking in certainty that it had little or no probative value, or that its admission unduly prejudiced him.

Burrus also complains the jury was "presented with irrelevant, inflammatory details surrounding the incident," including Jessica's adultery and illicit drug use.  It was Burrus, however, who brought these details to the jury's attention through his trial counsel's cross-examination of Jessica and direct examination of witnesses he called to impeach her credibility.  Because "the testimony about which [Burrus] now complains was elicited by his own counsel[,] any error was invited, and [Burrus] may not challenge that error on appeal."  (*People v. Williams* (2009) 170 Cal.App.4th 587, 620.)

Finally, Burrus contends the propensity evidence likely confused, misled or distracted the jury from its main inquiry of determining his guilt for the current offenses by "turn[ing the trial] into a mini-trial regarding the incident in Kansas."  We agree with Burrus there was a risk the jury would be tempted to convict him of the current charges to assure he was punished for the prior uncharged offense.  (See *People v. Branch* (2001) 91 Cal.App.4th 274, 284; *People v. Frazier* (2001) 89 Cal.App.4th 30, 42.)  We conclude, however, that instructions which focused the jury's attention on the current charges and the limited way in which the jury could consider the evidence of the uncharged assault on Jessica in relation to those charges [FN 10 omitted] effectively "counterbalanced" that risk.  (*Frazier*, at p. 42; see also *Miramontes*, *supra*, 189 Cal.App.4th at p. 1103 [instructing jury on limited purpose of evidence of prior uncharged sex crimes reduced possibility of jury confusion].)

In sum, we hold the probative value of the evidence of the uncharged sexual assault on Jessica was not "substantially outweighed" by the possibility of undue prejudice, confusion of the issues or misleading the jury.  (Evid. Code §§ 352, 1108, subd. (a).)  Thus, the trial court did not abuse its discretion in admitting that evidence.  (*Loy*, *supra*, 52 Cal.4th at pp. 61-64; *Nguyen*, *supra*, 184 Cal.App.4th at p. 1119.)

(Lodgment No. 6 at 15-21.)

As Respondent correctly notes, there is no clearly established Supreme Court law which holds that propensity evidence is inadmissible or violates due process.  Indeed, the Supreme Court expressly reserved deciding that issue in *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991).  *See Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008); *Alberni v. McDaniel*, 458 F.3d 860, 864 (9th Cir. 2006).  As the Ninth Circuit has noted:

The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [citation omitted], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial

1  evidence constitutes a due process violation sufficient to warrant issuance
2  of the writ.  Absent such "clearly established Federal law," we cannot
   conclude that the state court's ruling was an "unreasonable application."

3  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citing *Williams v. Taylor*,

4  529 U.S. 362, 375 (2000) and *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

5      Ninth Circuit precedent "squarely forecloses" the claim that admission of

6  propensity evidence violates due process.  *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir.

7  2008; *see also Greel v. Martel*, No. 10-16847, 2012 WL 907215, 472 Fed. Appx. 503,

8  504 (9th Cir. 2012) (stating that "Ninth Circuit precedent 'squarely forecloses [the]

9  argument' that admission of evidence of sexual misconduct to show propensity violates

10 due process") (quoting *Mejia*, 534 F.3d at 1046).

11     The state court's decision also was not based on an unreasonable determination of

12 the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(2).  The state court

13 correctly noted that there were significant similarities between Burrus's actions during

14 the alleged assault on Jessica and the charges involving Andrea A. and Cristina B.,

15 particularly the words Burrus used, the fact that he assaulted intoxicated victims, and

16 choked his victims when they resisted.  In addition, the state court correctly noted that

17 while Jessica's credibility was impeached, the evidence was not so unreliable that it

18 should have been excluded.

19     For all the foregoing reasons, the state court's denial of the claim cannot be said

20 to be contrary to or an unreasonable application of clearly established Supreme Court

21 law, nor was the state court's decision based on an unreasonable determination of the

22 facts.  *See Musladin*, 549 U.S. at 76-77; *Williams*, 529 U.S. at 412-13; *see also* 28 U.S.C.

23 § 2254(d)(2).  He is not entitled to relief as to this claim.

24 //

25 //

26 //

27 //

28 //

C. *Denial of Severance*

Next, Burrus argues the trial court improperly denied his motion to sever the charges involving the two victims, Andrea A. and Cristina B..  (Pet. at 7, 59-62.) Respondent counters the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Answer at 22-25.)

Burrus raised this claim in the petition for review he filed in the California Supreme Court on direct appeal.  (Lodgment No. 7.)  That court denied the petition without citation of authority.  (Lodgment No. 8.)  Accordingly, this Court must "look through" to the state appellate court's opinion as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.  That court wrote:

1. *Additional Facts*

Before trial, Burrus moved to sever the charges arising out of the alleged assault on Cristina from those arising out of the alleged assault on Andrea.  Burrus advanced four grounds for separate trials on the two sets of charges: (1) the facts underlying the charges were "materially dissimilar"; (2) evidence would not be cross-admissible if the charges were tried separately; (3) the weight of the evidence regarding the charges was "greatly different"; and (4) the punishment for the charges was life in prison.

In his motion, Burrus summarized the facts supporting the two sets of charges.  His factual summary pertaining to the assault on Cristina was consistent with the testimony as summarized in part II.A.1.a, *ante*.  Burrus's factual summary pertaining to the alleged assault on Andrea was as follows:

On the evening of December 27, 2008, Andrea, age 19, and two female friends were socializing at the home of a third female friend.  Andrea was drinking alcoholic beverages.  At approximately 9:00 p.m., a boyfriend of one of Andrea's friends arrived at the house with Burrus and another man.  Andrea had never met Burrus or the other man.

A short while after the men arrived, Andrea and two of her friends got into Burrus's vehicle and accompanied the men to a local liquor store.  Andrea went into the store with Burrus, who purchased a bottle of vodka.  The two returned to the vehicle.

Burrus then drove the group to a park near the liquor store.  he asked Andrea to get out of the vehicle with him so that one of his friends could have sex with one of her friends.  Andrea knew her friend was a prostitute.

Andrea exited the vehicle, and Burrus led her down an embankment.  When they reached the bottom, Burrus pushed Andrea up against a fence; grabbed her throat; called her a "bitch"; "told her that he was a pimp and that she was going to suck his dick"; and slapped her.  When Andrea

resisted, Burrus grabbed her by her hair, pushed her onto her knees and put his penis in her mouth.  He ejaculated in her mouth and forced her to swallow the semen.

After orally copulating Andrea, Burrus telephoned his friend and invited him to come down the embankment so that Andrea could perform fellatio on him.  When the friend arrived, Andrea orally copulated him. When Andrea finished, Burrus told her "she performed [fellatio] so well that he was going to take her with him to Reno the following day, and that she was his bitch."  Burrus and Andrea exchanged telephone numbers, and he drove her back to her friend's house.

Andrea notified the police the following day.  The police did not contact Burrus, however, until he was arrested after the sexual assault on Cristina.

. . . .

At the hearing on the motion [to sever], the trial court noted the legislative preference for joint trials and Burrus's burden to demonstrate a substantial danger of undue prejudice to overcome that preference.  In assessing prejudice, the court stated that highly inflammatory offenses were not joined with noninflammatory offenses; the offenses involved similar conduct; the evidence supporting the offense was very similar in weight; and the evidence was most likely cross-admissible.  The trial court therefore denied Burrus's motion for severance.

### 2. *Legal Analysis*

In reviewing a challenge to a denial of a motion to sever charges for trial, we begin with the premise that "[t]he law prefers consolidation of charges." (*People v. Ochoa* (2001) 26 Cal.4th 398, 423; accord *People v. Thomas* (2011) 52 Cal.4th 336, 349-350; *Alcala*, *supra*, 43 Cal.4th at p. 1220.) We review the trial court's denial of a defendant's severance motion for abuse of discretion (*People v. Stanley* (2006) 39 Cal.4th 913, 924 (*Stanley*)), which occurs only if the trial court's ruling falls outside the bounds of reason (*People v. Soper* (2009) 45 Cal.4th 759, 774 (*Soper*)). We consider the record before the trial court when it ruled on the motion. (*Alcala*, at p. 1220.)  As we shall explain, the trial court did not abuse its discretion in denying Burrus's severance motion.

### a. *Joinder Was Permissible*

The People were entitled to join the charges arising out of Burrus's alleged assault on Andrea with those arising out of his assault on Cristina. If offenses are "of the same class of crimes," the People may charge them in the same accusatory pleading.  (§ 954.)  Here, both sets of charges included a common offense, forcible oral copulation (§ 288a, subd. (c)(2)); counts 2, 3, 4, 5, 7 and 10 alleged Burrus committed that offense against Cristina; and counts 11 and 12 alleged he committed it against Andrea. Hence, these charges were subject to joinder because they involved offenses "of the same class of crimes." (§ 954; see *Soper*, *supra*, 45 Cal.4th at p. 771 [charges of same crime against two victims were of same class]; *People v. Poon* (1981) 125 Cal.App.3d 55, 69 (*Poon*) [sex offenses against two victims were properly joined].)

b. *Severance Was Not Required*

Although the statutory requirements for joinder were met, the trial court had discretion to order severance of the charged offenses "in the interests of justice and for good cause shown." (§ 954.) "The burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." (*People v. Bean* (1988) 46 Cal.3d 919, 938; see also *Stanley*, *supra*, 39 Cal.4th at p. 934 ["defendant can only predicate error in the denial of severance on a clear showing of potential prejudice"].) This is a heavy burden, for the benefits to the state in conserving judicial resources and public funds "often weigh strongly against severance of properly joined charges," and also give the trial court broader discretion in ruling on a severance motion that it has in ruling on the admissibility of evidence. (*Soper*, *supra*, 45 Cal.4th at p. 774, 775, fn. 7.) Thus, where, as here, charges meet the requirements for joinder, the burden of showing prejudice from denial of a severance motion "'is so great that the courts almost invariably reject the claim of abuse of discretion.'" (*People v. Matson* (1974) 13 Cal.3d 35, 39; accord, *Poon*, *supra*, 125 Cal.App.3d at p. 69.) Burrus has not met his burden here.

Burrus argues the joint trial prejudiced him because the evidence underlying the charges involving Cristina and the evidence underlying the charges involving Andrea would not have been cross-admissible in separate trials. According to Burrus: (1) the incidents involving Cristina and Andrea were so dissimilar that evidence of one incident would not have been admissible in a trial concerning the other if separate trials had been ordered; (2) the charges involving Andrea were likely to inflame the jury; and (3) because both cases were weak, especially the case involving Andrea, the "spillover effect" of the aggregate evidence most likely resulted in the convictions of the charges involving Cristina. We reject these arguments.

First, contrary to Burrus's contentions, the incidents involving Cristina and Andrea were not so dissimilar that evidence concerning one incident would have to be excluded in a trial concerning the other. As we explained earlier (see pt. II.B.2., *ante*), in a trial of sex offenses, evidence that a defendant committed other sex offenses is presumptively admissible. (Evid. Code § 1108, subd. (a); *Loy*, *supra*, 52 Cal.4th at p. 62.) Here, both sets of charges included forcible oral copulation (§ 288a, subd.(c)(2)), one of the sex offenses enumerated in Evidence Code section 1108, subdivision (d)(1)(A). As long as sex offenses committed on separate occasions are enumerated in that section, as they are here, the offenses are considered sufficiently similar for purposes of admissibility under Evidence Code section 1108. (*Miramontes*, *supra*, 189 Cal.App. 4th at p. 1099.)

Second, the similarity between the incidents involving Cristina and Andrea was so great that it removed any likelihood that either incident would unduly inflame the jury against Burrus. In both incidents: (1) the victims were young women who had been drinking; (2) Burrus was a stranger to both victims; (3) he transported the victims to secluded locations; (4) he called the victims "bitch"; (4) using the same obscene language, he ordered the victims to perform fellatio on him; (6) when the victims resisted, Burrus slapped them and grabbed their throats; and (7) he forced the victims to orally copulate him and swallow his semen. Contrary to Burrus's assertions, then, the two sets of charges were "similar in nature and equally egregious — hence neither, when compared to the other, was likely to

1  inflame a jury against defendant." (*Soper*, *supra*, 45 Cal.4th at p. 780; see
2  also *Alcala*, *supra*, 43 Cal.4th at p. 1227 [one set of offenses was not
unusually likely to inflame the jury against defendant when both sets were
similar in nature and equally gruesome].)

3

4         Third, the purported weakness of the evidence supporting the two
cases, especially that involving Andrea, did not, as Burrus erroneously
5  contends, "result[] in a prejudicial spillover effect." "As an initial matter,
based upon the information before the trial court at the time it ruled on the
6  severance motion, it was not clear that the evidence supporting [one set of
charges] was significantly weaker than that underlying [the other set]."

7  (*Soper*, *supra*, 45 Cal.4th at p. 780.)  The information before the trial court
consisted of Cristina's and Andrea's preliminary hearing testimony, as
8  summarized in Burrus's motion and in the People's opposition.  That
testimony, if repeated at trial and believed by the jury, would have been
9  sufficient to support convictions of the charged offenses. (See *Poggi*, *supra*,
45 Cal.3d at p. 326 ["In California conviction of a sex crime may be
10 sustained upon the uncorroborated testimony of the prosecutrix."].) "In any
event, as between any two charges, it always is possible to point to
11 individual aspects of one case and argue that one is stronger than the other.
A mere imbalance in the evidence, however, will not indicate a risk of
12 prejudicial 'spillover effect,' militating against the benefits of joinder and
warranting severance of properly joined charges." (*Soper*, at 781.)

13

14        In sum, we hold Burrus has not sustained his burden to "show that a
substantial danger of prejudice compelled severance." (*Stitely*, *supra*, 35
15 Cal.4th at p. 531.)  Accordingly, he has not shown the trial court abused its
discretion in denying his motion to sever counts for trial. (*Soper*, *supra*, 45
Cal.4th at p. 774.)

16

17        Our conclusion Burrus has not shown error in the trial court's denial
of his severance motion does not end our inquiry, however.  Our Supreme
18 Court has "held that even if a trial court's ruling on a motion to sever is
correct at the time it was made, a reviewing court still must determine
19 whether, in the end, the joinder of counts or defendants for trial resulted in
gross unfairness depriving the defendant of due process of law." (*People
20 v. Rogers* (2006) 39 Cal.4th 826, 851.)  We hold there was no such
deprivation here, for several reasons: (1) the evidence of each offense was
21 "'"simple and distinct"'"; (2) there was not "great disparity in the nature of
the two charges — the facts pertaining to each crime, compared to the
22 other[s], were not likely to unduly inflame the jury"; (3) the evidence
underlying the two sets of charges did not differ significantly in strength; (4)
23 the trial court instructed the jury that each count charged was separate crime
the jury had to consider separately and for which it had to return a separate
24 verdict (*Soper*, *supra*, 45 Cal.4th at p. 784; see CALCRIM No. 3515); and
(5) the jury found Burrus guilty of some charges, not guilty of others, and
25 was unable to reach verdicts on others, indicated "'that the jury was capable
of differentiating [among his] various [crimes]'" and that "'no improper
spillover effect is evident here.'" (*Soper*, at p. 784.)

26

27 (Lodgment No. 6 at 22-29.)

28

"The Supreme Court has never held that a trial court's failure to provide separate trials on different charges implicates a defendant's right to due process." *Collins v. Uribe*, No. 11-56297, 564 Fed. Appx. 343 (9th Cir. 2014) citing *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010); *see also Martinez v. Yates*, No. 13-16154, 2014 WL 5293673 (9th Cir., Oct. 17, 2014); *Runningeagle v. Ryan*, 686 F.3d 758, 774 (9th Cir. 2012). "Because [there is] no clear answer to the question presented, . . . 'it cannot be said that a state court unreasonably applied clearly established Federal law.'" *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quoting *Musladin*, 549 U.S. at 77).

In any event, even if Burrus had identified clearly established federal law permitting him to exert a due process right, it was not violated here because his trial was not fundamentally unfair. Although the Supreme Court has never directly addressed the question, the Ninth Circuit has stated that '[f]ederal habeas is available for improper consolidation only if the simultaneous trial 'actually render[ed the] state trial fundamentally unfair and hence, violative of due process." *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000) (quoting *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir.1991). California Penal Code section 954 states "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or . . . two or more different offenses of the same class of crimes or offenses, under separate counts . . . ." (Cal. Penal Code § 954.)   Joinder of counts is favored because it promotes efficiency. *People v. Myles*, 53 Cal. 4th 1181, 1200 (2012). Burrus was charged with forcible oral copulation against both Andrea and Cristina, and thus, as the state court found, joinder of the two crimes was proper under § 954.

Further, although under California law, a trial court "may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately," Cal. Penal Code § 954, the first consideration in whether to grant severance is whether the evidence would have been cross-admissible in separate trials. *People v. Soper*, 45 Cal. 4th 759, 774-75 (2009). "If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any

suggestion of prejudice and to justify a trial court's refusal to sever properly joined

charges." *Id.* at 775.   In Burrus's case, the evidence was clearly cross-admissible

pursuant to California Evidence Code section 1108(a), which provides:

> (a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.
> . . . .
> (d) As used in this section, the following definitions shall apply:
>
> (1) "Sexual offense" means a crime under the law of a state or of the United States that involved any of the following:
>
> (A) Any conduct proscribed by Section 243.4, 261, 261.5, 262, 264.1, 266c, 269, 286, 288, 288a [forcible oral copulation], 288.2, 288.5, or 289, or subdivision (b), (c), or (d) of Section 311.2 or Section 311.3, 311.4, 311.10, 311.11, 314, or 647.6, of the Penal Code.

(Cal. Evid. Code § 1108) (West 2009).

Further, the state court's decision was not based on a unreasonable determination

of the facts in light of the evidence presented.   28 U.S.C. § 2254(d)(2).   The state court

thoroughly and accurately discussed why severance was not required to protect Burrus's

rights, including that the incidents were similar, neither incident was so egregious that it

would be likely to inflame the jury against him, and neither case was significantly weaker

than the other such that a "spillover effect" would occur, prompting the jury to convict

him of the charges in the weaker case based on the strength of the evidence of the

stronger case.   Indeed, as the California court noted, the jury acquitted Burrus of the

charges involving Andrea and was unable to reach verdicts on others.   (Lodgment No.

1 at 0240-62.)

For all the foregoing reasons, the state court's denial of this claim was neither

contrary to, nor an unreasonable application of, clearly established Supreme Court law.

*Williams*, 529 U.S. at 412-13.   Burrus is not entitled to relief as to this claim.

D. *Refusal to Read Back Testimony to the Jury*

Burrus contends the trial judge improperly denied the jury's request for readback of Burrus's and Cristina's testimony, which violated his federal due process rights to a fair trial.  (Pet. at 62-68.)  Respondent contends Burrus has not stated a federal claim, and, in the alternative, no due process violation occurred because the jury, which was reconstituted after two alternates were seated, did not ask for a readback of testimony after they began deliberations anew.  (Answer at 20-22.)

Burrus raised this claim in the petition for review he filed in the California Supreme Court on direct appeal.  (Lodgment No. 7.)  That court denied the petition without citation of authority.  (Lodgment No. 8.)  Accordingly, this Court must "look through" to the state appellate court's opinion as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.  That court wrote:

1. *Additional Facts*

During deliberations, a juror sent a note to the trial court requesting a readback of the testimony of Cristina and Burrus.  The following day, the court replaced two jurors with alternates.  After the replacement, the court advised the jury:

"[W]e had some issues, including we're going to have to substitute in a couple people for personal reasons.  And, so, I'm going to . . . reread you an instruction, and you're going to go back in and deliberate.  Before we do that, *if you want readback, that's fine.  But readback, you read both direct and cross, redirect, recross.  And it can take — take some time . . . . It may take a day or so.  But it's up to you.  I'm not discouraging you, I'm just making you aware of that fact . . . .*

"I just want to be very clear . . . . You're going to start your deliberations from the beginning. *I'm going to disregard those other notes about readback . . . . Until you tell me you need them, I'm not going to act on them, because you're starting from scratch.*  So until you tell me you need them.  But just understand this is not Monday Night Football.  There is no instant replay. *[The court reporter] will go in and read to you, but it takes time.  And, again, if you want it, it's there.  I'm not discouraging it, but I just want to let you know that it does take some time*.  So, again, start anew."  (Italics added.)

After beginning deliberations anew, the jury did not request readback of either Burrus's or Cristina's testimony.

2. *Legal Analysis*

The trial court did not err by refusing to read back certain trial testimony to the jury. If a jury desires to rehear certain testimony after it has begun deliberations, the testimony must be read back upon request. (§ 1138; *People v. Hillhouse* (2002) 27 Cal.4th 469, 506 (*Hillhouse*).) Although section 1138 is primarily concerned with a jury's right to information needed to reach a verdict, it also implicates a defendant's right to a fair trial. (*People v. Soloman* (2010) 49 Cal.4th 792, 824; *People v. Ayala* (2000) 23 Cal.4th 225, 288.) A trial court does not violate a defendant's rights under section 2238 when, in response to a jury request for a readback of testimony, the court advises the jury that testimony may take a long time to read, provided the court also advises the jury that the testimony will be read back if requested. (*People v. Anjell* (1979) 100 Cal.App.3d 189, 202-203 (*Anjell*), disapproved on unrelated grounds by

*People v. Mason* (1991) 52 Cal.3d 909, 943, fn. 13.) That is all that happened here.

When the court received the note requesting a readback of Cristina's and Burrus's testimony, it advised the jury that the readback "may take a day or so"; but the court also stated that it was "not discouraging" a readback and that testimony would be read upon request. After the jury was reconstituted and restarted deliberations, however, it did not request a readback of the testimony. Hence, because "the court made clear it *would* provide any requested rereading of material testimony," its comments about the amount of time it might take to read the requested testimony did not amount to impermissible jury coercion or otherwise violate "defendant's right to have the jury provide a rereading of testimony on request." (*Hillhouse*, *supra*, 27 Cal.4th at pp. 506, 507, citing *Anjell*, *supra*, 100 Cal.App.3d at pp.202-203.) [FN 11 omitted.]

(Lodgment No. 6 at 29-31.)

Burrus has not cited, and the Court has been unable to locate, any clearly established Supreme Court law holding that a failure to read back testimony to a jury upon request violates the federal constitution. That alone dooms Burrus's claim under 28 U.S.C. § 2254(d)(1). *Musladin*, 549 U.S. at 77. Moreover, the Ninth Circuit has stated that "a trial court has wide latitude in deciding whether to have testimony requested by the jury read back." *Riley v. Deeds*, 56 F.3d 1117, 1120 (9th Cir. 1995).

To the extent Petitioner contends the state court's decision involved an unreasonable determination of the facts, the record does not reflect the trial judge refused to read back testimony. The readback request was made by the jury before two alternate jurors were substituted in. Due to the alternates joining the jury, the jury was required to begin deliberations from the beginning. Readback of testimony would not have made

1   sense to the newly constituted jury, since neither the new additions nor the existing jurors

2   had discussed the evidence with their fellow jurors yet.  And, the trial judge was quite

3   clear that if the newly constituted jury wanted readback of any testimony once they had

4   the chance to consider the evidence from the beginning, he would gladly accommodate

5   that request. There was no error.

6          For the foregoing reasons, the state appellate court's denial of this claim was

7   neither contrary to, nor an unreasonable application of, clearly established Supreme Court

8   law, nor did it involve an unreasonable determination of the facts.   28 U.S.C. §

9   2254(d)(1), (2).  Burrus is not entitled to relief as to this claim.

10         E.  *Sufficiency of Evidence*

11         Burrus argues there was insufficient evidence to convict him.  (Pet. at 9, 68-75.)

12  Burrus raised this claim in the petition for review he filed in California Supreme Court

13  in his direct appeal.  (Lodgment No. 7.)  That court denied the petition without citation

14  of authority.  (Lodgment No. 8.)  Accordingly, this Court must "look through" to the state

15  appellate court's opinion as the basis for its analysis.  *Ylst*, 501 U.S. at 805-06.  That

16  court wrote:

17         2.  *Legal Analysis*

18         In deciding Burrus's claim of insufficient evidence, we examine the
19         record as a whole to determine whether it contains evidence that is
           reasonable, credible and of solid value from which a rational jury could find
           the defendant guilty beyond a reasonable doubt.  (*People v. Griffin* (2004)
20         33 Cal.4th 1015, 1028; *People v. Barnes* (1986) 42 Cal.3d 284, 303
           (*Barnes*).  We defer to the jury's determinations of credibility and the truth
21         or falsity of the facts on which those determinations depend, and we
           presume in support of the judgment the existence of every fact the jury
22         reasonably could deduce from the evidence.  (*People v. Smith* (2005) 37
           Cal.4th 733, 739; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  Viewing
23         the record in this light, we ask whether "*any* rational trier of fact could have
           found the essential elements of the crime beyond a reasonable doubt."
24         (*Jackson v. Virginia*, (1979) 443 U.S. 307, 319.)

25         Applying these standards, we shall analyze separately the evidence
           supporting the two rape convictions and the evidence supporting the five
26         forcible oral copulation convictions. [FN 5]. We shall then address Burrus's
           arguments for reversal.

27
           [FN 5: Burrus does not expressly challenge his conviction on
28         count 1 of kidnaping to commit rape or forcible oral copulation
           (§ 209, subd. (b)(1)) or separately discuss the evidence as it

pertains to that conviction.  We therefore deem Burrus to have forfeited any claim of error regarding the count 1 conviction and do not separately discuss the elements of the crime or the evidence supporting the conviction. (See, e.g., *Moore v. Shaw* (2004) 116 Cal.App.4th 182, 200, fn. 10; *People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.)]

### a.  *Evidence to Support Rape Convictions (Counts 6 & 9)*

To find Burrus guilty of rape, the jury had to find beyond a reasonable doubt that he had "sexual intercourse" with Cristina against her will "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury."  (§ 261, subd. (b)(2).)  For example, Cristina testified: (1) she was not attracted to Burrus; (2) she got into his SUV expecting to be driven home; (3) Burrus beat her and threatened to take her to Mexico to sell her; (4) Cristina told Burrus she feared he would kill her and dump her body on the road; and (5) she refused his demands that she disrobe so they could have intercourse at the motel.  (See *People v. Hart* (1999) 20 Cal.4th 546, 611 (*Hart*) [sexual assault victim's "own testimony, which provided graphic detail of the attack, would have been sufficient by itself"].)  In addition, the nurse who performed the sexual assault examination found multiple injuries on Cristina's body, including the vulva, vagina and perineum, which were consistent with a sexual assault. On these facts, a reasonable jury could have found Cristina's acts of sexual intercourse with Burrus were "induced by either force, fear, or both, and, in any case, fell short of a consensual act." (*Barnes*, *supra*, 42 Cal.3d at p. 305; see, e.g., *People v. Maury* (2003) 30 Cal.4th 342, 403 (*Maury*) [inference victim did not consent to sexual intercourse arose from her testimony she feared for her life, defendant refused to take her home, and she disrobed only after defendant ordered her to do so]; *People v. Knox* (1988) 204 Cal.App.3d 197, 204 [force or fear of bodily injury element of rape was established by evidence defendant accosted victims in remote areas late at night, beat them and drove them away in his vehicle]; *People v. Ogden* (1940) 41 Cal.App.2d 447, 454 ["battered and bruised condition of [rape victim's] body" constituted evidence of force].)  Sufficient evidence therefore supports the two rape convictions.

### b.  *Evidence To Support Forcible Oral Copulation Convictions (Counts 2, 4, 5, 7 & 10)*

To find Burrus guilty of forcible oral copulation, the jury had to find beyond a reasonable doubt that he inserted his penis into Cristina's mouth against her will "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§ 288a, subd. (c)(2).)  "Any penetration of the mouth, no matter how slight, constitutes a violation of this section." (*People v. Hickok* (1950) 96 Cal.App.2d 621, 628.)

There was ample evidence to support the convictions of forcible oral copulation.  Burrus admitted one act of fellatio occurred when he pulled off the freeway on the way to the motel.  Cristina testified Burrus inserted his penis into her mouth on at least five separate occasions: once on a side street in Pacific Beach (count 2); twice on the freeway on the way to the motel, before and after he strangled her (counts 4 & 5); and twice at the motel, after each of the two acts of sexual intercourse (counts 7 & 10).  Cristina's additional testimony that she feared for her life; that Burrus duped her into

1

2

3

4

5

6

7

8

9

10

11

entering his SUV, drove to various locations, beat her, strangled her, threatened to sell her in Mexico and repeatedly grabbed her head to push his penis into her mouth; and that she tried to hurt Burrus by squeezing his penis, showed that Burrus orally copulated Cristina against her will "by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." (§ 288a, subd. (c)(2); see, e.g., *People v. Minor* (1980) 104 Cal.App.3d 194, 197 ["The offense is complete when, as occurred here according to the testimony of the victim, the mouth is forcibly placed upon the genital organ of another."]; *People v. King* (1979) 94 Cal.App.3d 696, 701-702 [misleading victim as to defendant's intent, taking victim to a secluded area, order victim to perform oral copulation, and threatening victim that she was "'going to go through it again'" established forcible compulsion element of the offense]; *People v. Campbell* (1978) 87 Cal.App.3d 678, 684 [defendant's threatening victim with bodily injury and choking victim established forcible compulsion element of offense].)   Sufficient evidence therefore supports Burrus's convictions of five counts of forcible oral copulation.

(Lodgment No. 6 at 10-14.)

12

13

14

15

16

17

18

In assessing a sufficiency of the evidence claim on federal habeas review, the Supreme Court has stated that "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005), quoting *Jackson*, 443 U.S. at 319.   In determining whether sufficient evidence has been presented, the Court must accept the elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 324, n. 16.

19

20

21

22

23

24

25

26

27

As both the state appellate court and Respondent note, there was sufficient evidence presented at trial to convict Burrus.   Burrus was convicted of five counts of forcible oral copulation. (Lodgment No. 1 at 0240-62.)   To be convicted of forcible oral copulation, the prosecution had to establish, beyond a reasonable doubt, that Burrus inserted his penis into Cristina's mouth without her consent and by force, fear or threats. (Lodgment No. 1 at 0115-16; CALCRIM No. 1015.)   To be convicted of forcible rape, the prosecution had to prove, beyond a reasonable doubt, that Burrus had sexual intercourse with Cristina, i.e. penetrated her vagina with his penis, without her consent by force, fear or threats.  (*Id.* at 0117; CALCRIM No. 1000.)

28

Cristina testified she got into Burrus's car with the understanding he was going to drive her and her bike back to her house. Instead, Burrus drove her away from her house, which frightened her. (Lodgment No. 2, vo1. 13 at 2270.) When she asked where he was going, Burrus told her to shut up. (*Id.*) He then pulled over to the side of the road and said, "Bitch, suck my dick." (*Id.*) She refused, and testified that she did not want to suck his penis. (*Id.* at 2271.) Burrus then hit her, grabbed her head, and forced his penis into her mouth. (*Id.* at 2272.) This is sufficient evidence to convict Burrus of count two (forcible oral copulation, to wit: first occasion – Pacific Beach). (Lodgment No. 1 at 0242.)[3]

Burrus continued to hit her. (Lodgment No. 2, vol. 13 at 2273.) At this point, Cristina was very scared because she didn't know Burrus and did not know what he was capable of doing. (*Id.* at 2275.) Burrus then began driving again and got on the freeway. (*Id.* at 2277.) At some point, Burrus pulled over to the side of the freeway and told Cristina to get on top of him. (*Id.*) When Cristina refused, Burrus began hitting her again and then began to strangle her. (*Id.* at 2277-78.) Burrus also threatened to sell her in Mexico, pulled out a knife and held it to her throat. (*Id.* at 2279.) Burrus then told Cristina he knew how to strangle people without leaving a mark. (*Id.*) Cristina was scared for her life and thought Burrus was going to kill her. (*Id.* at 2280-81.) After

---

[3] The state appellate court did not address Burrus's conviction for kidnaping for the purpose of committing rape or forcible oral copulation because it concluded Burrus had not expressly challenged that conviction and thus had "forfeited any claim of error" regarding that conviction. (Lodgment No. 6 at 11, fn. 5.) Burrus also did not challenge that count in the petition for review. It is clear, however, that were Burrus to present the claim to the California Supreme Court in a habeas corpus petition, the state court would reject it as untimely. *See In re Robbins*, 18 Cal. 4th 770, 814-15. In cases like these, the Ninth Circuit has held such claims are "technically exhausted," but procedurally defaulted if the procedural rule that would be imposed is independent and adequate. *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011). The United States Supreme Court found California's timeliness rule independent and adequate in *Walker v. Martin*, 562 U.S. __, 131 S. Ct. 1120, 1128 (2011). The claim is without merit, however, even under *de novo* review. Kidnaping for the purpose of rape or oral copulation requires the prosecution to prove, beyond a reasonable doubt, that Burrus intended to commit rape or oral copulation when he took or detained Cristina by using force or fear. (*See* Lodgment No. 1 at 1003-14; CALCRIM No. 1203.) Burrus induced Cristina to get into his car by telling her he would take her home, then drove away from her house, parked in a secluded location, told her to "suck his dick," and when she refused, beat her. (Lodgment No. 2, vol .13 at 2272-74.) That is sufficient evidence to support his conviction for kidnaping for the purpose of rape or forcible oral copulation. *See Juan H.*, 408 F.3d at 1275.

Burrus strangled her, he forced his penis into her mouth again, and Cristina tried to hurt him by squeezing his penis. (*Id.* at 2282-84.) Burrus became angry and continued to tell Cristina to "suck his dick." (*Id.* at 2283-84.) He then forced her face and mouth onto his penis. (*Id.* at 2284.) This is sufficient evidence to convict Burrus of counts four (forcible oral copulation, to wit: first occasion – freeway) and five (forcible oral copulation, to wit: second occasion  – freeway). (Lodgment No. 1 at 246-48.)

Burrus then drove Cristina to a motel. (*Id.* at 2286-88.) Once inside the room, Burrus ordered Cristina to take her clothes off, and when she refused, he threatened to sell her in Mexico again. (*Id.* at 2293.) When Cristina took too long taking her clothes off, Burrus began ripping them off. (*Id.* at 2294.) Burrus then had sexual intercourse with Cristina without her consent. (*Id.* at 2294.) At some point, Burrus took his penis out of Cristina's vagina and told her to orally copulate him. (*Id.* at 2295.) This is sufficient evidence to support Burrus's convictions for counts six (forcible rape, to wit: first occasion – Econo Lodge) and seven (forcible oral copulation, to wit: first occasion – Econo Lodge).

Burrus then told Cristina to get into the shower in an apparent attempt to remove evidence of the sexual assaults from her body. (*Id.* at 2298.) When she got out of the shower and began putting her clothes back on, Burrus told her he was "not done yet," and told her to take her clothes off again. (*Id*. at 2300.) Burrus then had sexual intercourse with Cristina again without her consent. (*Id.* at 2301-02, 2305.) He then forced Cristina to orally copulate him again. (*Id.* at 2302.) This is sufficient evidence to support Burrus's convictions for counts nine (forcible rape, to wit: second occasion, Econo Lodge) and ten (forcible oral copulation, to wit: second occasion, Econo Lodge). There is no merit to Burrus's claim that there was insufficient evidence to convict him of the crimes against Cristina, and thus the state court's resolution of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. He is not entitled to relief as to this claim.

F.  *Burrus' Sentence and the Constitutionality of Penal Code § 667.6(d)*

Finally, in claims five and six, Burrus contends his sentence violates the Federal Constitution because it increases the punishment for his crimes based on facts found by a judge and not a jury, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Specifically, Burrus argues the recent Supreme Court case of *Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151 (2013), invalidated California's mandatory consecutive sentencing scheme under which Burrus was sentenced (Penal Code § 667.6(d)), and that Burrus's sentence violated his Fifth and Sixth Amendment rights because it was based on facts found by a judge and not by a jury beyond a reasonable doubt.  (Pet. at 38-51.) Respondent counters that *Alleyne* did not render Penal Code § 667.6(d) unconstitutional because consecutive sentencing is governed by the Supreme Court's decision in *Oregon v. Ice*, 555 U.S. 160 (2009).  (Answer at 33-37.)

Burrus raised these claims in the habeas corpus petition he filed in the California Supreme Court.  (Lodgment No. 9.)  That court denied the petition without citation of authority.  (Lodgment No. 11.)  Accordingly, because it was not presented to any other state court, this Court must conduct and independent review of the record to determine whether the state court's denial was contrary to, or an unreasonable application of, clearly established Supreme Court law.  *Himes*, 336 F.3d at 853.

Penal Code section 667.61(c) provides that a defendant convicted of rape or forcible oral copulation who kidnaped the victim is subject to a term of imprisonment of fifteen years-to-life.  Cal. Penal Code § 667.61(b), (c)(1), (c)(7), (e)(1).  Penal Code section 667.6 provides for mandatory consecutive sentencing for those crimes under certain circumstances:

> A full, separate, and consecutive term shall be imposed for each violation of [rape and/or forcible oral copulation] if the crimes involve separate victims or involve the same victim on separate occasions.
>
> In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned

his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions.

Cal. Penal Code § 667.6(d).

In Burrus's case, the judge concluded that each crime against Cristina was a separate occasion, and sentenced Burrus to a term of fifteen years-to-life on each count, with counts four, five, six, seven, nine and ten to be served consecutively to count two; his sentence on count one was stayed pursuant to Penal Code § 654.[4]  (Lodgment No. 1 at 0174-76.)

Citing *Alleyne* and *Apprendi*, Burrus argues his sentence violates his Sixth Amendment rights because by sentencing him to consecutive terms, the judge increased the "sentencing floor" for his crimes based on facts (that the crimes were committed on separate occasions) that were not found by a jury beyond a reasonable doubt.   But *Alleyne* addressed a situation different from Burrus's.   In *Alleyne*, the defendant was subject to three possible mandatory minimum terms of imprisonment, five, seven or ten years, for a using or carrying a firearm during the commission of a crime.  Five years was the presumptive floor, while a defendant found to have brandished the firearm faced a mandatory minimum of seven years, and a defendant found to have discharged the firearm faced a mandatory minimum of ten years.  *Alleyne*, 133 S. Ct. at 2155-56.  The judge sentenced Alleyne to seven years, finding he had brandished the firearm.  The Supreme Court reversed, concluding Alleyne's sentence had been increased over the statutory minimum of five years using facts found by a judge (that the firearm was

---

[4] Penal Code § 654 states:

a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

(b) Notwithstanding subdivision (a), a defendant sentenced pursuant to subdivision (a) shall not be granted probation if any of the provisions that would otherwise apply to the defendant prohibits the granting of probation.

1  discharged) and not by a jury beyond a reasonable doubt in violation of the Sixth
2  Amendment.  *Id.* at 2158.

3      By contrast, in *Ice*, the defendant sought to invalidate a sentence similar to the one
4  in Burrus's case.  Ice was sentenced to consecutive sentences after the sentencing judge
5  found, pursuant to Oregon law, that the two burglaries of which Ice was convicted were
6  "separate incidents," and that each sexual offense Ice committed indicated a "'willingness
7  to commit more than one . . . offense' during each criminal episode, and his conduct
8  'caused or created a risk of causing greater, qualitatively different loss, injury or harm to
9  the victim.'" *Ice*, 555 U.S. at 165-66.  Upholding the sentence, the Supreme Court noted
10  that historically, "the jury played no role in the decision to impose sentences
11  consecutively or concurrently.  Rather, the choice rested exclusively with the judge." *Ice*,
12  555 U.S. at 168.  The Court concluded that sentencing a defendant to consecutive rather
13  than concurrent sentences based on judge-found facts did not offend the Sixth
14  Amendment.  *Id.* at 171-72.

15      *Ice*, and not *Alleyne*, controls Burrus's case.  The prescribed sentencing range for
16  Burrus's offenses was fifteen years-to-life.  Penal Code §§ 667.61(b), (c)(1), (c)(7),
17  (e)(1).  Burrus received a sentence of fifteen years-to-life on for each of his crimes, and
18  thus, unlike the defendant in *Alleyne*, he was not subject to an increased base penalty
19  based on facts not found by a jury beyond a reasonable doubt.  The decision to run those
20  terms consecutively did increase the total amount of prison time he faced.  But, as *Ice*
21  instructs, the judge's decision to run the terms consecutively, even if based on "judge-
22  found facts," does not offend the Sixth Amendment.  *Ice*, 555 U.S. at 171-72.

23      It was reasonable, and indeed in this Court's view correct, to apply the Supreme
24  Court's holding in *Ice* to Burrus's claim and deny it.  *See Harrington v. Richter*, 562 U.S.
25  __, 131 S.Ct. 770, 786 (2011) (stating that "a state court's determination that a claim
26  lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'
27  on the correctness of the court's decision").  *Alleyne* does not invalidate or render
28  unconstitutional the sentencing scheme of Penal Code § 667.6 because, as discussed in

*Ice*, the decision whether to run sentences consecutively rests with the sentencing judge, even if the decision is made based upon "judge-found facts." Accordingly, Burrus is not entitled to relief as to this claim and it should be denied.

## V.     CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Larry Alan Burns under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(4) of the United States District Court for the Southern District of California.

Further, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** Petition for Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **December 19, 2014**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **January 16, 2015**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED:  November 19, 2014

Hon. William V. Gallo
U.S. Magistrate Judge