# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| BRANDON SHAWN BURRUS, | CASE NO. 13cv1789-LAB (WVG) |
|---|---|
| Plaintiff(s), | **ORDER ADOPTING REPORT AND RECOMMENDATION; AND** |
| vs. | |
| J. SOTO, Warden, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| Defendant(s). | |

Petitioner Brandon Shawn Burrus, a prisoner in state custody who is represented in this proceeding by counsel, filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72, this matter was referred to Magistrate Judge William Gallo for report and recommendation. On November 19, 2014, Judge Gallo issued his report and recommendation (the "R&R"), which recommended denying the petition. Burrus has filed objections.

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This section does not require some lesser review by the district court when no objections are filed.

*Thomas v. Arn*, 474 U.S. 140, 149–50 (1985).  The "statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original).

Burrus objects solely to the R&R's conclusion that his fifth and sixth claims, regarding the constitutionality of Cal. Penal Code § 667.6(d), are foreclosed by *Oregon v. Ice*, 555 U.S. 160 (2009). Instead, he argues, he is entitled to relief under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 133 S.Ct. 2151 (2013).

Because Burrus does not challenge the R&R's factual findings, or of its analysis or recommended disposition of any of his other claims, the Court need not conduct a *de novo* review of those portions of the R&R. The Court has reviewed those portions of the R&R, however, finds them to be correct, and **ADOPTS** them.

**Case History**

Burrus' conviction stems from the kidnapping and rape of a victim, Cristina B., on or around February 19, 2009. Burrus picked up his victim in a bar, on the pretext of giving her a ride home. Over the course of the evening until around dawn of the next day he committed multiple acts of assault, forced copulation and rape, some in his vehicle (at different locations) and some in a motel room. The evidence against him, and the timeline of his actions, are summarized in the R&R at 24:1 to 25:23.

Burrus was convicted of one count of violating Cal. Penal Code § 209(b)(1) (kidnapping to commit oral copulation - count 1), five counts of violating Cal. Penal Code § 288(c)(2) (forcible oral copulation - counts 2, 4, 5, 7, and 10), and two counts of violating Cal. Penal Code § 261(a)(2) (forcible rape - counts 6 and 9). The jury also found the aggravating circumstance of kidnapping, as set forth in Cal. Penal Code § 667.61(b)(c) and (e).

At sentencing, the judge, pursuant to Cal. Penal Code § 667.6(d), determined that the crimes against Cristina B. were committed on separate occasions and sentenced him to seven consecutive terms of fifteen years to life in prison — in effect, 105 years to life. Had

the judge determined that the crimes were committed on the same occasion, Burrus would have been sentenced to seven concurrent terms of fifteen years to life.

Burrus exhausted most of his claims, then filed his petition in this case on July 31, 2013. At the same time, he filed a petition in the California Supreme Court raising claims under *Alleyne*, which the U.S. Supreme Court had decided approximately a month earlier. This petition was stayed pending the exhaustion of Burrus' *Alleyne* claims. The California Supreme Court denied relief without citation to authority.[1] Because the state court provided no basis for its reasoning in rejecting Burrus' *Alleyne* claims, the Court must conduct an independent review of the record to determine whether the state court's decision was contrary to, or an unreasonable application of clearly established law, as determined by the U.S. Supreme Court. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

In *Apprendi*, the Supreme Court held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490. But, as the R&R correctly notes, the Supreme Court in *Oregon v. Ice*, 555 U.S. 160 (2009) held that states are free to assign to judges, rather than juries, the responsibility for finding facts necessary to the imposition of consecutive rather than concurrent offenses.

In *Ice*, the Court examined an Oregon statute providing that sentences were to run concurrently unless the judge found certain statutorily prescribed facts. 55 U.S. at 165. In the underlying case, the judge made factual findings regarding the defendant's willingness to cause additional harm in each criminal count for which he was convicted; the statute therefore gave the judge discretion to impose consecutive sentences. *Id*. In reaching its conclusion that the statute comported with the Sixth Amendment, the Court reasoned that the rule announced in *Apprendi* did not govern consecutive sentencing decisions. *Id*. at 167–69. The decision was founded on the reasoning that the decision whether sentences

/ / /

---

[1] This is treated as a denial on the merits. *See Walker v. Martin*, 562 U.S. 307, 131 S.Ct. 1120, 1124 (2011); *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 784–85 (2011).

should run concurrently or consecutively was never entrusted to juries, and that it was the prerogative of the states to set the rules for administering multiple sentences:

> These twin considerations—historical practice and respect for state sovereignty—counsel against extending *Apprendi*'s rule to the imposition of sentences for discrete crimes. The decision to impose sentences consecutively is not within the jury function that "extends down centuries into the common law." *Apprendi*, 530 U.S., at 477, 120 S.Ct. 2348. Instead, specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures.

555 U.S. at 168.

> In light of [the historical record], legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in *Apprendi*. There is no encroachment here by the judge upon facts historically found by the jury, nor any threat to the jury's domain as a bulwark at trial between the State and the accused. Instead, the defendant—who historically may have faced consecutive sentences by default—has been granted by some modern legislatures statutory protections meant to temper the harshness of the historical practice.

*Id*. at 169.

The statute at issue here is somewhat different, but not meaningfully distinguishable. The California statute allows the judge to determine whether the defendant had an opportunity to reflect and relent between each count on which he was convicted. If so, the judge is required to impose concurrent sentences. The fact that the Oregon statute gives more discretion to the judge makes no real difference, however, in light of the states' prerogative to set down the rules for multiple sentences. *Ice*, 555 U.S. at 168. The fact that they specified somewhat different rules does not change that. *Ice* also makes clear that "the jury play[s] no role in the decision to impose sentences consecutively or concurrently." *Id*. The opinion makes clear that states may, consistently with the Sixth Amendment, make either concurrent or consecutive sentences the norm and allow judges to depart based on facts not submitted to a jury. *Id*. at 171. And in addition, the opinion makes clear that *Apprendi*'s rule applies only to decisions involving sentencing for one discrete crime, rather than for multiple offenses[2] different in character or committed at different times. *Id*. at 167.

---

[2] In *Ice*, the jury convicted the defendant of two burglaries and of multiple counts of sexual assault during each burglary. But it was the the judge — not the jury ---- who found the defendant's two burglaries to be separate incidents, 555 U.S. at 165–66, and each act

The opinion in *Ice* did not specifically mention whether California's statute falls within its reasoning, but did mention that there was cause to think at least seventeen states' statutory schemes did, and expressed uncertainty about how many others there might be. 555 U.S. at 171. *See also id*. at 164 nn. 1–3 and accompanying text (discussing the statutory schemes of Connecticut, Idaho, Nebraska, Florida, Mississippi, Maine, and Tennessee, as well as Oregon).

*Alleyne* addressed the question of whether a fact that increased the minimum sentence must be submitted to a jury. Burrus argues that because the imposition of consecutive sentence had the effect of increasing the minimum sentence, this case controls, and amounts to a reversal or limitation of *Ice*. But *Alleyne* was merely an application of *Apprendi* to facts increasing the minimum as well as maximum sentence, and it overruled *Harris v. United States*, 536 U.S. 545 (2002) as inconsistent with *Apprendi*. *Alleyne*, 133 S.Ct. at 2163. Nor does it deal with the same or analogous facts or legal principles; under *Ice*'s holding, *Apprendi* is inapplicable to facts underlying a judge's decision to impose either concurrent or consecutive sentences for convictions on multiple counts. *See Ice*, 555 U.S. at 167.

Another reason for concluding that *Alleyne* is inapplicable to questions of sentencing on multiple counts is that it does not mention, much less purport to overrule, limit, or modify *Ice*. *See Minority Television Project, Inc. v. F.C.C.*, 736 F.3d 1192, 1198 (9th Cir. 2013) ("We do not credit Minority TV's argument that *Citizens United* . . . overruled decades of precedent sub silentio — especially given that the Court there expressly overruled two other cases with no mention of [the precedent Minority TV was challenging] . . ."). Furthermore, it is worth noting that even though the cases were decided just four years apart, several justices, without comment, took different positions in each case.

---

of sexual assault during each of the two burglaries showed the defendant's willingness to commit more than one offense during each criminal episode, and that each act caused or created a risk of additional harm. *Id*. at 166. In other words, the conviction of a defendant on multiple counts amounted to a conviction for multiple offenses, for *Ice*'s purposes. The judge could then properly determine whether each of those offenses should be treated as part of the same incident or as separate incidents for purposes of imposing either concurrent or consecutive sentences.

Burrus also argues that in relying on *Ice*, the state court relied on an "odd rule" inconsistent with *Apprendi* and its progeny. To this end, he at length cites Justice Scalia's dissent in that case. (Obj. to R&R, 5:10–6:19.) A dissent, of course, represents a losing position and is not binding precedent.  He also argues that because *Ice* (contrary to the views of the majority opinion) is inconsistent with *Apprendi* and *Alleyne*, and because its reasoning is "illogical," it should not control. (*Id*., 7:1–8:19.)  Aside from the obvious fact that this Court cannot overrule the Supreme Court's decisions, the state courts were perfectly entitled to rely on *Ice* and treat it as good law.  But more than that, the Court holds that *Oregon* remains good law even after *Alleyne*, and that *Ice,* rather than *Apprendi* and *Alleyne*, controls here.

That is not the end of the analysis, however. Federal habeas review of state court judgments is even more deferential. With exceptions not applicable here, the writ is available only where a state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d). Even if the state courts were wrong, habeas relief must be denied, so long as "fairminded jurists could disagree" on the correctness of the decision. *Richter*, 131 S.Ct. at 786. The state courts' reliance on *Ice*, and determination that *Apprendi* and *Alleyne* do not apply, easily pass this deferential review.

The Court **OVERRULES** Burrus' objections to the R&R, and **ADOPTS** the R&R.  The writ is **DENIED**, and a certificate of appealability is also **DENIED**.

**IT IS SO ORDERED**.

DATED:  January 22, 2015

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge